1
2
3
4
5
6
7
8
9          IN THE UNITED STATES DISTRICT COURT

10          FOR THE EASTERN DISTRICT OF CALIFORNIA

11  BOB SAVAGE,

12          Plaintiff,              No. 2:08-cv-1346-LKK-JFM (PC)

13      vs.

14  SUZAN HUBBARD, et al.,

15          Defendants.            <u>FINDINGS & RECOMMENDATIONS</u>

16  _____/

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18  42 U.S.C. § 1983.  This action is proceeding on claims against ten defendants, raised in

19  plaintiff's first amended complaint filed January 22, 2009, that they violated his rights under the

20  Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the

21  Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA) by

22  denying him participation in a Meals on Wheels program at California Medical Facility (CMF)

23  and thereby denying him food for thirty-eight days.  Plaintiff also raises pendent state law claims

24  based on the allegations that underlie his federal claims.  This matter is before the court on

25  defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff opposes the

26  motion and seeks entry of judgment in his favor.

1

1    SUMMARY JUDGMENT STANDARDS UNDER RULE 56

2          Summary judgment is appropriate when it is demonstrated that there exists "no

3    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4    matter of law."  Fed. R. Civ. P. 56(c).

5          Under summary judgment practice, the moving party

6        always bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the

7        pleadings, depositions, answers to interrogatories, and admissions
    on file, together with the affidavits, if any," which it believes

8        demonstrate the absence of a genuine issue of material fact.

9    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

13   after adequate time for discovery and upon motion, against a party who fails to make a showing

14   sufficient to establish the existence of an element essential to that party's case, and on which that

15   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

16   concerning an essential element of the nonmoving party's case necessarily renders all other facts

17   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

18   whatever is before the district court demonstrates that the standard for entry of summary

19   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

20         If the moving party meets its initial responsibility, the burden then shifts to the

21   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

22   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

23   establish the existence of this factual dispute, the opposing party may not rely upon the

24   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25   form of affidavits, and/or admissible discovery material, in support of its contention that the

26   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/////

1    On August 4, 2009, the court advised plaintiff of the requirements for opposing a

2  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3  F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

4  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5                                          FACTS[1]

6    At all times relevant to this action, plaintiff was incarcerated at California Medical

7  Facility (CMF) in Vacaville, California, in the H-1 Outpatient Housing Unit (OHU).  Defendant

8  Andreasen was the Chief Medical Officer at CMF.  Defendant Sabin was a physician and

9  surgeon at CMF, as was defendant Zhu.  Defendant Gibbs was a supervising registered nurse at

10  CMF.  Defendants Chanan, Shelton and Borbe were employed as correctional officers and

11  defendants Johns, Williams, and Duffy were employed as correctional sergeants at CMF.

12    In March 2007, a medical chrono was issued concerning plaintiff's functional

13  capacity.  Defendants' Ex. L, filed May 31, 2011, at 3.  The chrono provided:

14    This is a renewal of the patient's functional capacity chrono.
      Patient has a long history of chronic low back pain, extensive
15    varicose veins in bilateral legs, persistent pain and swelling in both
      extremities, and bilateral carpal tunnel syndrome.  He also has
16    migraine headaches that cause him to have photosensitivity.

17    In an 8-hour day, the patient can sit, stand, and walk for
      approximately 20-30 minutes, and then he needs rest due to both
18    lower extremity varicose veins.  He can lift up to 10 pounds.  He
      cannot squat, kneel, or bend.  He can occasionally climb stairs or
19    ladders without having pain in his extremities.  He can reach above
      his shoulders without limitation.  He has difficulty performing
20    repetitive motions because of his carpal tunnel syndrome, causing
      him to have pain in both hands.
21
      Because of his extensive varicose veins and pain in his extremities,
22    he needs to keep his lower extremities elevated for most of the day.

23    This chrono is valid for one year (through March 5, 2008).
      However, a primary care healthcare provider can reevaluate
24    patient's functional capacity at any time.

25  _____

26    [1] Except as noted, the following facts are undisputed.

                                              4

1   Defendants' Ex. L, at 3.

2          At all times relevant to this action, CMF had a cell feeding program referred to as

3   "Meals on Wheels."  Defendants' Ex. B, Declaration of Dr. Andreasen in Support of Motion for

4   Summary Judgment, filed May 31, 2011 (Andreasen Decl.), at ¶ 7.  Plaintiff was on the cell feed

5   list starting in 2004.

6          In 2007, a decision was made to limit the number of inmates on the cell feed list

7   in plaintiff's housing unit.  Id. at ¶ 10.  In August 2007, defendant Sabin recommended that

8   plaintiff be removed from the cell feed list.  Defendants' Ex. C, Declaration of Dr. Sabin in

9   Support of Motion for Summary Judgment, filed May 31, 2011 (Sabin Decl.), at ¶ 14.  In

10   September 2007, plaintiff was readmitted to the cell feed list with other inmates in his housing

11   unit who had been removed.  Id. at ¶ 17.

12          In support of their motion for summary judgment, defendants present the

13   following evidence.  The basis for the decision to limit the number of inmates on the cell feed list

14   was that it had become burdensome on staff and resources to cell feed the number of inmates on

15   the list.  Andreasen Decl. at ¶ 10.  Defendant Sabin was asked to review the cell feed list for

16   plaintiff's housing unit to determine who on the list was medically able to go to the cafeteria to

17   receive their meals.  Sabin Decl. at ¶ 12.  Defendant Sabin observed plaintiff, who walked with a

18   cane, "frequently walk up and down the corridor of the prison with no difficulty."  Id. at ¶ 13.

19   Based on his observations of plaintiff, as well as his medical examination of plaintiff and his

20   examination of plaintiff's medical records, defendant Sabin believed plaintiff did not require cell

21   feeding and that it would be beneficial to plaintiff to obtain extra exercise by walking to an from

22   the cafeteria.  Id. at ¶ 14.  Defendant Sabin also believed going to the cafeteria was consistent

23   with plaintiff's chronos which said he could sit, stand, and walk for twenty to thirty minutes and

24   then rest.  Id.  Defendant Sabin recommended that plaintiff be removed from the cell feed list,

25   and based on that recommendation plaintiff was removed from the list.  Id.

26          Defendants also present evidence that there is no evidence that plaintiff did not

1    receive food during the thirty-eight days that he was off the cell feed list.  In particular, plaintiff's

2    "medical records indicate that from August 4, 2007 through September 24, 2007, [plaintiff]'s

3    vital signs (pulse, respiration, blood pressure) exhibited no changes that would indicate he was

4    not eating on a regular basis."  Id. at ¶ 22.  Plaintiff was seen for weekly checkups on August 9,

5    2007, August 16, 2007, August 23, 2007, August 30, 2007, September 6, 2007, and September

6    13, 2007.  Defendants' Ex. L.  There is no record in the notes from any of those visits of plaintiff

7    complaining of hunger or any other ill effects from not being cell fed.  Id.

8            Defendants also present evidence that the canteen, the visiting room, and the law

9    library were farther away from plaintiff's cell than the cafeteria, and that plaintiff would have had

10   to walk right by the cafeteria to get to any of those places.  Defendants. Ex. H., Declaration of D.

11   Borbe in Support of Motion for Summary Judgment, filed May 31, 2011 (Borbe Decl.), at ¶ 4.  In

12   August 2007, defendant Borbe, a correctional officer at CMF, observed plaintiff walking up and

13   down corridors in his housing unit using a cane.  Id. at ¶ 5.  Plaintiff visited the prison canteen on

14   August 16, 2007 and September 13, 2007.  Defendants' Ex. M.  Between August 7, 2007 and

15   September 15, 2007, plaintiff had seventeen visits with his wife.  Defendants' Ex. N.  In addition,

16   plaintiff "had access to a wheelchair, if he wanted to use one."  Andreasen Decl. at ¶ 15.

17           In opposition to the motion, plaintiff presents the following evidence.  The

18   decision to discontinue cell-feeding inmates in plaintiff's housing unit was caused by a conflict

19   between defendant Chanan, a correctional officer at CMF, and medical staff over whose

20   responsibility it was to deliver the cell fed meals.  Exhibit A to Plaintiff's Response to

21   Defendants' Motion for Summary Judgment, filed September 19, 2011, Declaration of Plaintiff

22   in Opposition to Summary Judgment and in Support of Direct Verdicts (Savage Decl.), at ¶¶ 20.

23   Only inmates in plaintiff's housing unit were removed from the cell feed list; no other housing

24   units reduced the number of cell fed inmates.  Id. at 22.

25           In his declaration, plaintiff avers that it generally takes between forty-five minutes

26   to an hour from the time an inmate at CMF is released from his cell to go to the cafeteria until

1   they are returned to their housing units, and that it can take longer if situations arise that require a

2   staff response. Id. at ¶¶ 16-17. At his deposition, however, plaintiff testified that "[o]ne chow

3   hall session from the time they unlock to the time you get back usually runs about 30 minutes."

4   Plaintiff's Ex. B, Deposition of Bob Savage, filed September 19, 2011, at 16:21-23. Plaintiff

5   also presents evidence that eating in the cafeteria would require that he "squat down low in order

6   to sit on the steel stools", and "causes [his] "legs to swell and throb and causes extreme pain in

7   [his] back from bulging disks and spinal spurs." Savage Decl. at ¶ 15. Plaintiff avers that he

8   "never went to the chow halls in 2007 or for several years prior to 2007 or since for any meals

9   because it causes me so much physical pain he [sic] cannot each once he [sic] is there." Id. at ¶

10   19. Plaintiff was "forced to ask for food from other prisoners and subsist on candy and snacks

11   that have little nutritional value" until he could get to the prison canteen to buy food. Id. at ¶ 35.

12   In addition, his family had to send him extra money to buy food during this period. Id. at ¶ 36.

13          Plaintiff disputes defendants' evidence that he received weekly checkups,

14   claiming that the reports tendered by defendants are "usually" prepared by nurses sitting with a

15   stack of medical charts and writing notes about patients once a week. Id. at ¶ 52. Plaintiff

16   acknowledges going to the visiting room, but avers that "staff made ADA Accommodations for

17   the plaintiff in the form of a soft high back chair and a place so he can elevate his legs at a high

18   table, with sufficient space to walk in the passageways." Id. at ¶ 53.

19                       ANALYSIS

20   I. Eighth Amendment

21          The Eighth Amendment protects a prison inmate's right to food "'adequate to

22   maintain health.'" Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996) (quoting LeMaire v.

23   Maass, 12 F.3d 1444, 1456 (9th Cir. 1993)). "The sustained deprivation of food can be cruel and

24   unusual punishment when it results in pain without any penological purpose." Foster v. Runnels,

25   554 F.3d 807, 814 (9th Cir. 2009) (citing Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir.2002)).

26   However, the United States Court of Appeals has suggested that "there may be 'a difference

between using food deprivation as a punishment and establishing a reasonable condition to the

receipt of food,' . . ." Id. (quoting Freeman v. Berge, 441 F.3d 543, 545 (7th Cir. 2006)).

> In the same way that an inmate relies on prison officials to provide appropriate medical care, see Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and protection from assaults by other inmates, see Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), inmates rely on prison officials to provide them with adequate sustenance on a daily basis. The repeated and unjustified failure to do so amounts to a serious depravation [sic].

Foster, id.

The gravamen of plaintiff's claim is that the decision to remove him from the

Meals on Wheels program caused him to be deprived of food in a manner that violated the

Eighth Amendment.  However, while there are several factual disputes between the parties, the

facts material to resolution of this claim are undisputed.  Plaintiff was removed from the Meals

on Wheels Program for thirty-eight days.  During that period, plaintiff was able to, and did, walk

with a cane distances further from his cell than the cafeteria.  While plaintiff presents evidence

that sitting on the stools in the cafeteria caused him significant pain, it is undisputed that plaintiff

had access to a wheelchair[2] and there is no evidence that he was prohibited from using a

wheelchair in the cafeteria.

Unlike Foster, where the plaintiff was denied meals in his cell during a prison

lockdown, it is undisputed that plaintiff could have received food in the prison cafeteria during

the thirty-eight days that he was not on the cell feed list.  Assuming the truth of plaintiff's

evidence that he would have suffered significant pain while sitting on the stools in the cafeteria,

it is undisputed that he had access to a wheelchair and there is no evidence that use of a

---

[2]  In opposition to defendants' motion, plaintiff presents a declaration from inmate Rick Lauranzano, in which Mr. Lauranzano avers that plaintiff "never had a wheelchair until October of 2010."  Plaintiff's Ex. D, Declaration of Rick Lauranzano, filed September 19, 2011, at ¶ 3. This is insufficient to create a triable issue of fact as to whether plaintiff had access to a wheelchair at all times relevant to this action.  It does, however, demonstrate that plaintiff can use a wheelchair.

8

1  wheelchair would have been insufficient to address the seating issues in the cafeteria.

2          For the foregoing reasons, this court finds that defendants are entitled to summary

3  judgment on plaintiff's Eighth Amendment claim.

4  II.  ADA/Section 504 of the RA

5          Plaintiff also claims that his removal from the Meals on Wheels Program violated

6  his rights under the ADA and Section 504 of the RA.  Defendants seek summary judgment on the

7  grounds that (1) the undisputed evidence shows that plaintiff was not denied access to the Meals

8  on Wheels Program due to any disability, and (2) there is no evidence that any defendant

9  intentionally discriminated against plaintiff.  In opposition to the motion, plaintiff contends that

10  defendants failed in their duty to accommodate his disability when they removed him from the

11  Meals on Wheels program.

12          To prevail on an ADA claim

13          plaintiff must show: (1) he is a "qualified individual with a
           disability"; (2) he was either excluded from participation in or
14          denied the benefits of a public entity's services, programs, or
           activities, or was otherwise discriminated against by the public
15          entity; and (3) such exclusion, denial of benefits, or discrimination
           was by reason of his disability. Weinreich v. Los Angeles County
16          Metropolitan Transp. Auth., 114 F.3d 976, 978 (9th Cir.1997).

17          Title II of the ADA was expressly modeled after § 504 of the
           Rehabilitation Act.  [Footnote omitted]  A plaintiff bringing suit
18          under § 504 must show (1) he is an individual with a disability; (2)
           he is otherwise qualified to receive the benefit; (3) he was denied
19          the benefits of the program solely by reason of his disability; and
           (4) the program receives federal financial assistance. Id

20
21  Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001).  In addition, to obtain money

22  damages on a claim under the ADA or section 504 of the RA, "a plaintiff must prove intentional

23  discrimination on the part of the defendant."  Id. at 1138 (citing Ferguson v. City of Phoenix, 157

24  F.3d 668, 674 (9th Cir.1998)).

25          Here, the issue is whether defendants denied plaintiff access to food by reason of

26  his disability.  For the reasons set forth in section I, supra, this court finds that the undisputed

1  evidence shows they did not.  Defendants are entitled to summary judgment on plaintiff's

2  ADA/RA claim.

3

4  III.  Equal Protection Clause

5          Defendants seek summary judgment on plaintiff's claim that his removal from the

6  Meals on Wheels program and the accompanying denial of in cell feeding violated his rights

7  under the Equal Protection Clause of the Fourteenth Amendment on the ground that there is no

8  evidence that he was treated differently from any similarly situated inmate, and that there was a

9  rational basis for the decision to remove him from the program.  Plaintiff contends that there is

10 evidence that he was treated differently from other disabled inmates and that he was removed

11 from the program arbitrarily.

12          State prison inmates retain a right to equal protection of the laws guaranteed by

13 the Fourteenth Amendment.  Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Lee v.

14 Washington, 390 U.S. 333, 334 (1968)).

15              In the prison context, however, even fundamental rights such as the
               right to equal protection are judged by a standard of
16             reasonableness-specifically, whether the actions of prison officials
               are "reasonably related to legitimate penological interests." Turner
17             v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987);
               see also Jordan v. Gardner, 986 F.2d 1521, 1530 (9th Cir.1993)
18             (equal protection concerns fall under Turner ).

19 Walker, at 974.  Here, the undisputed evidence shows that a staffing issue led defendants to limit

20 cell-feeding in plaintiff's housing unit for a period of thirty-eight days.[3]  The cell feed list for

21 plaintiff's entire housing unit was reviewed, and there is no evidence that plaintiff was treated

22 differently from any similarly situated inmate in that unit.  Defendants are entitled to summary

23 judgment on this claim.

24
          _____

25          [3]  As noted above, plaintiff contends that the staffing issue was caused by defendant
       Chanan's objection to delivering trays to cells, and defendants contend that the staffing issue was
26     one of limited resources.  The dispute is immaterial.  Under either scenario, reducing the size of
       the cell-feed list was "reasonably related to legitimate penological interests."

IV.  <u>Pendent State Law Claims</u>

        For the reasons set forth <u>supra</u>, defendants are entitled to summary judgment on plaintiff's federal claims.  For that reason, the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims, and those claims should be dismissed.  <u>See</u> 28 U.S.C. § 1367 (c)(3).

        In accordance with the above, IT IS HEREBY RECOMMENDED that:

        1.  Defendants' May 31, 2011 motion for summary judgment be granted as to plaintiff's remaining federal claims;

        2.  Plaintiff's September 19, 2011 request for entry of judgment in his favor be denied; and

        3.  The district court decline to exercise supplemental jurisdiction over plaintiff's state law claims.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 27, 2012.

UNITED STATES MAGISTRATE JUDGE